IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

═══════════════════════════════════

JOSE BERMUDEZ,

                              Plaintiff,          Civil Action No.
              v.                                  9:11-CV-0947 (MAD/DEP)

C.O. WAUGH,

                              Defendant.

═══════════════════════════════════

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

JOSE BERMUDEZ, *Pro Se*
03-A-4229
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

FOR DEFENDANT:

HON. ERIC T. SCHNEIDERMAN          DOUGLAS J. GOGLIA, ESQ.
Attorney General of the            Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This action was commenced by *pro se* plaintiff Jose Bermudez, a New York State prison inmate, by the filing of a petition that has been construed by the court as asserting a civil rights claim pursuant to 42 U.S.C. § 1983. Liberally interpreted, that petition alleges that defendant Waugh, a corrections officer employed at the prison facility in which plaintiff was confined at the relevant times, assaulted Bermudez after he refused to comply with an order that he was allegedly exempt from obeying.[1]

Currently pending before the court is defendant Waugh's motion for summary judgment seeking dismissal of the excessive force claim asserted against him. In support of that motion, defendant argues that the amount of force applied, even by plaintiff's account, was constitutionally insignificant and does not support an Eighth Amendment cruel and unusual punishment claim. Plaintiff has not opposed defendant's motion.

---

[1]     District Judge Mae A. D'Agostino construed plaintiff's petition as also asserting a claim against another corrections officer, defendant Meineke, whose only alleged role in the events giving rise to this action was to serve Bermudez with a misbehavior report that resulted from the incident. Dkt. No. 7 at 7. Plaintiff's claim against defendant Meineke, however, was dismissed, *sua sponte*, on November 1, 2011, based on Judge D'Agostino's initial review of plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A(b). *Id.* at 7-8.

For the reasons set forth below, I recommend that the defendant's motion be granted.

I.    BACKGROUND

Plaintiff is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  Def.'s Local Rule 7.1 Statement (Dkt. No. 24, Attach. 2) at ¶ 1.[2]  At all the times relevant, plaintiff was confined at the Eastern Correctional Facility ("Eastern"), located in Napanoch, New York.  *Id.*

On the morning of May 4, 2011, Bermudez was informed that he was being relocated from his cell in Eastern's west wing to another housing unit within the facility.   Def.'s Local Rule 7.1 Statement (Dkt. No. 24, Attach. 2) at ¶ 3.  In response, plaintiff prepared for the move by packing his personal property and proceeding to the ground floor of Eastern.  *Id.* at ¶¶ 4-5.

When defendant Waugh, a corrections officer at Eastern, arrived at

_____

[2]    Because plaintiff has not opposed defendant's summary judgment motion, the facts set forth in defendant's statement of material facts, submitted pursuant to Northern District of New York Local Rule 7.1(a)(3), are deemed admitted by plaintiff for purposes of the pending motion.  *See* N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."); *see also Ketchuck v. Boyer*, 2011 WL 5080404, at *2 (N.D.N.Y. Oct. 25, 2011) (McAvoy, J.) ("The responding Statement of Material Facts is not a mere formality, and the courts apply this ruly strictly." (listing cases)).

the ground floor, a dispute arose concerning the extent of plaintiff's personal property. Def.'s Local Rule 7.1 Statement (Dkt. No. 24, Attach. 2) at ¶ 6. Specifically, defendant Waugh accused plaintiff of having excessive property, and ordered plaintiff several times to take his property bags to the basement for inspection and inventorying. *Id.* at ¶¶ 7-13. Plaintiff refused each of those orders, claiming that, because he was medically exempt from lifting anything in excess of twenty pounds, he could not comply with defendant Waugh's directives. *Id.* at ¶ 14. Instead, plaintiff sat down in a chair, explicitly stated that he was refusing to comply with the orders, and demanded that the sergeant on duty be contacted. *Id.* at ¶ 15.

After another corrections officer approached the area and indicated that he needed to use the cart on which plaintiff's personal property was situated, defendant Waugh again ordered plaintiff to remove a bag of property from the cart. Def.'s Local Rule 7.1 Statement (Dkt. No. 24, Attach. 2) at ¶¶ 20-21. After plaintiff complied, defendant directed him to carry the rest of his bags. *Id.* at ¶ 23. Plaintiff again refused to comply with this order, and defendant Waugh "charged [him] like a football player . . . leaned down a little bit, ran towards [him,] . . . pushed his weight

against [his] body" and either hit or punched plaintiff in the chest. Plf.'s Dep. Tr. (Dkt. No. 24, Attach. 4) at 19; *see also* Def.'s Local Rule 7.1 Statement (Dkt. No. 24, Attach. 2) at ¶ 26. Immediately following the encounter, which lasted only "seconds," plaintiff was transported to the facility's special housing unit ("SHU"). *Id.* at ¶¶ 27, 31. Approximately one hour later, Bermudez was taken to the prison infirmary, where his injuries were examined by facility medical staff and photographed. Def.'s Local Rule 7.1 Statement (Dkt. No. 24, Attach. 2) at ¶ 32. Medical records from that examination reflect that plaintiff's injuries from the alleged assault included only a "dime-size" abrasion in an "I" pattern on his chest, some redness and edema, and a bruise on the right side of his chest. Def.'s Local Rule 7.1 Statement (Dkt. No. 24, Attach. 2) at ¶ 33. Those observations are consistent with Bermudez's deposition testimony, in which he agreed that the entirety of his injuries as a result of defendant Waugh's alleged assault included a "red mark" or "red bruise" on his chest. Plf.'s Dep. Tr. (Dkt. No. 24, Attach.4) at 33-36.

Following the incident, plaintiff's property was inspected revealing an altered hot pot, considered contraband under prison rules. *Id.* at ¶¶ 29, 30. Plaintiff was subsequently issued a misbehavior report for possessing

contraband, creating a disturbance, refusing to obey a direct order, and engaging in verbal harassment. *Id.* at ¶ 30; *see also* Disciplinary Incident Summary (Dkt. No. 24, Attach. 7) at 2-3. On May 16, 2011, a Tier III hearing was held on the charges, and plaintiff was found guilty on all counts.[3] *Id.*

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action in the Southern District of New York through the filing of a "Petition Pursuant to Civil Service Law," dated May 9, 2011. Dkt. No. 1. In that petition, plaintiff requests that the court initiate proceedings against defendants Waugh and Meineke pursuant to, *inter alia*, N.Y. Civil Service Law § 75. *See generally id.* Following a review of that petition, the matter was transferred to this district by order of Chief District Judge Loretta A. Presca issued on August 5, 2011, based on the fact that the events giving rise to plaintiff's claims arose in this district. Dkt. No. 5.

---

[3]    The DOCCS conducts three types of inmate disciplinary hearings. See 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. *Hynes*, 143 F.3d 655 n.1. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. *Id.* Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *Id.*

Upon transfer of the matter to this district, Judge D'Agostino conducted an initial review of plaintiff's petition and accompanying *in forma pauperis* ("IFP") application, concluding that plaintiff qualifies for IFP status, and that his petition, liberally construed, sets forth an excessive force claim against defendant Waugh, in violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983. Dkt. No. 7 at 6-7. The court also concluded that the petition did not assert any cognizable claims against defendant Meineke, and ordered all claims against her be dismissed with leave to replead.[4] *Id.* at 7-8.

Now that discovery in the action is closed, defendant Waugh has moved for the entry of summary judgment dismissing plaintiff's excessive force claim against him. Dkt. No. 24. In his motion the defendant argues that the record evidence, including plaintiff's own deposition testimony, demonstrates that the amount of force used against plaintiff was *de minimis*, and does not support an Eighth Amendment violation. *Id.* Despite receiving notice of defendant's filing of the motion, and the need to properly oppose it, from both defendant's counsel and the court, *see* Dkt. Nos. 24, 25, plaintiff has failed to respond. *See generally* Docket

---

[4] Despite being given this opportunity, plaintiff has not submitted an amended complaint or petition.

Sheet.  Defendant's motion is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

   A.    Summary Judgment Standard

   Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Merits of Plaintiff's Excessive Force Claim

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or which 'involve the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) and *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (internal citations omitted)).  While the Eighth Amendment "'does not mandate comfortable prisons,' neither does it permit inhumane ones."  *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain."  *Whitley v. Albers,* 475 U.S. 312, 319 (internal quotation marks omitted); *Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999).  "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components – one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."  *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson,* 503 U.S. at 7-8 and *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)).  To satisfy the

subjective requirement in an excessive force case, the plaintiff must demonstrate that "the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Wright*, 554 F.3d at 268 (internal quotation marks omitted).  This inquiry turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6 (1992) (internal quotation marks omitted), *accord*, *Blyden*, 186 F.3d at 262.  The Supreme Court has emphasized that the nature of the force applied is the "core judicial inquiry" in excessive force cases – not "whether a certain quantum of injury was sustained."  *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1179 (2010) (per curiam).  Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness.  *Wilkins*, 130 S. Ct. at 1179; *Hudson*, 503 U.S. at 9.

Additionally, courts must bear in mind that "[n]ot every push or shove, even if it later may seem unnecessary in the peace of a judge's

chambers, violates a prisoner's constitutional rights." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal quotation marks omitted); *see also Griffin*, 193 F.3d at 91. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted).

"The objective component [of the excessive force analysis] . . . focuses on the harm done, in light of 'contemporary standards of decency.'" *Wright*, 554 F.3d at 268 (quoting *Hudson*, 503 U.S. at 8); *see also Blyden*, 186 F.3d at 263 (finding the objective component "context specific, turning upon 'contemporary standards of decency'"). In assessing this component, a court must ask whether the alleged wrongdoing is objectively harmful enough to establish a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991), *accord Hudson*, 503 U.S. at 8; *see also Wright*, 554 F.3d at 268. "But when prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency always are violated. This is true whether or not significant injury is evident.'" *Wright*, 554 F.3d at 268-69 (quoting *Hudson*,

503 U.S. at 9) (alterations omitted)).  The extent of an inmate's injury is but one of the factors to be considered in determining whether a prison official's use of force was "unnecessary and wanton" because "injury and force . . . are imperfectly correlated[.]" *Wilkins*, 130 S. Ct. at 1178.  In addition, courts consider the need for force, whether the force was proportionate to the need, the threat reasonably perceived by the officials, and what, if anything, the officials did to limit their use of force.  *Hudson*, 503 U.S. at 7;  *Whitley*, 475 U.S. at 321; *Romano*, 998 F.2d at 105.

Finally, on a motion for summary judgment, where the record evidence could reasonably permit a rational factfinder to find that corrections officers used force maliciously and sadistically, dismissal of an excessive force claim is inappropriate.  *Wright*, 554 F.3d at 269 (citing *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (reversing summary dismissal the plaintiff's complaint, though suggesting that prisoner's evidence of an Eighth Amendment violation was "thin" as to his claim that a corrections officer struck him in the head, neck, shoulder, wrist, abdomen, and groin, where the "medical records after the . . . incident with [that officer] indicated only a slight injury")).

In this case, the record evidence, even considered in the light most

favorable to plaintiff, demonstrates no dispute of material fact as to whether the force used by defendant Waugh can satisfy either the objective or subjective components of an excessive force analysis.  As it relates to the objective component, by his own account, plaintiff's injury only amounted to a small "red mark" or "red bruise" on his chest.  Plf.'s Dep. Tr. (Dkt. No. 24, Attach. 4) at 35; *see also* Plf.'s Dep. Tr. (Dkt. No. 24, Attach. 4) at 7-8 (describing the use of force as "a simple assault" and testifying that he does not claim "that [he] was hurt severely").  Such a limited use of force cannot satisfy the objective requirement "in light of 'contemporary standards of decency.'"  *Wright*, 554 F.3d at 268 (quoting *Hudson*, 503 U.S. at 8).

Neither can plaintiff's claim satisfy the subjective component of an excessive force analysis.  Again, by plaintiff's own account, defendant Waugh used force only as a result of plaintiff's explicit refusal to obey multiple orders.  *See*, *e.g.*, Plf.'s Dep. Tr. (Dkt. No. 24, Attach. 4) at 17 ("[Defendant Waugh] said, 'Now I am giving you a direct order . . . .' I said, 'I refuse a direct order. Call the sergeant.'").   In addition, the degree of force that was applied was minimal.  Specifically, the force by defendant Waugh was applied over only a matter of seconds and included only a

single push or shove, with plaintiff admitting that defendant Waugh, when allegedly "charging" plaintiff, was not running at top speed. *Id.* at 18-19, 34. Considering all of this testimony together, I find that no rational factfinder could conclude that defendant Waugh used force against plaintiff in a malicious or sadistic manner, or that the force used was not in a "good faith effort to . . . restore discipline." *Hudson*, 503 U.S. at 6.

This finding is consistent with that of other courts applying *Hudson* and its progeny. *See, e.g., Boddie v. Schneider,* 105 F.3d 857, 862 (finding allegations that the plaintiff was "bumped, grabbed, elbowed, and pushed" by defendants insufficient to support to an excessive force claim); *Gillard v. Hamel*, No. 09-CV-0431, 2012 WL 967064, at * 4-6 (N.D.N.Y. Feb. 24, 2012) (Peebles, M.J.), *report and recommendation adopted in its entirety by* 2012 WL 960967 (N.D.N.Y. Mar. 21, 2012) (McAvoy, J.) (finding allegations that a defendant took the plaintiff's hands, twisted his wrists, placed his knee on his neck, and rubbed his face on the ground while trying to subdue him in the course of an altercation with a fellow inmate insufficient to establish an Eighth Amendment cruel and unusual punishment claim); *Brown v. Busch*, 954 F. Supp. 588, 595-96 W.D.N.Y. 1997) (finding the allegation that two officers pushed the plaintiff into his

cell causing a small abrasion on his neck found to be constitutionally insignificant).[5]

Finally, although not dispositive, it is worth noting that plaintiff testified at his deposition that it was not his objective to have his petition to be construed as a section 1983 civil rights action challenging the physical force used against him by defendant Waugh.  Plf.'s Dep. Tr. (Dkt. No. 24, Attach. 4) at 8.  Instead, plaintiff intended only to challenge "the fact that [he] was . . . forced to obey an order that[,] medically[, he] was exempt from" obeying.  *Id.* at 8; *see also id.* at 38 ("[A]s I understand it today, this has turned now to a lawsuit that my whole claim was something else.").

For all of these reasons, I recommend that plaintiff's excessive force claim be dismissed.

IV.    SUMMARY AND RECOMMENDATION

Plaintiff's petition in this matter has been construed by the court as asserting an excessive force claim against defendant Waugh, based upon his application of force following Bermudez's refusal to obey his orders.  It now appears that in commencing this action, plaintiff did not intend to sue

---

[5]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

defendant Waugh for damages claiming that his Eighth Amendment rights were violated.  In any event, because no rational factfinder could find that the use of force, which  resulted in only a minor injury requiring no medical treatment, was anything but *de mininis*, and there is no record evidence to support a finding that defendant Waugh applied force maliciously and sadistically, I conclude that no reasonable factfinder could find that, by his actions, defendant Waugh violated plaintiff's Eighth Amendment right to be protected from cruel and unusual punishment.  Accordingly, it is hereby respectfully,

RECOMMENDED defendant's motion for summary judgment (Dkt. No. 24) be GRANTED, and that plaintiff's complaint in this action be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

Dated:     January 29, 2013
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp.2d, 2011 WL 5080404 (N.D.N.Y.)

(Cite as: 2011 WL 5080404 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Jason A. KETCHUCK, Plaintiff,
v.
Brad A. BOYER, Defendant.
No. 3:10–CV–870 (TJM / DEP).

Oct. 25, 2011.
Jason A. Ketchuck, Endicott, NY, pro se.

Roger W. Kinsey, Office of Attorney General, Albany, NY, for Defendant.

### DECISION & ORDER

THOMAS J. McAVOY, Senior District Judge.

### I. INTRODUCTION

**\*1** Plaintiff Jason A. Ketchuck commenced this action *pro se* asserting claims of false arrest, malicious prosecution, and abuse of process pursuant to 42 U.S.C. § 1983. *See* Compl., dkt. # 1. Defendant moves for summary judgment seeking to dismiss the action in its entirety. *See* Motion, dkt. # 15. In opposition, Plaintiff filed only affidavits from himself and his father. *See* Opp., dkt. # 18.[FN1] Defendant has filed a reply. *See* Reply, dkt. # 19. The Court has determined to decide the motion based upon the submissions alone. *See* N.D.N.Y.L.R. 7.1(h) ("In the district court judge's discretion ..., the district court judge may dispose of a motion without oral argument. Thus, the parties should be prepared to have their motion papers serve as the sole method of argument on the motion.").

> FN1. Plaintiff was served with the Northern District's standard summary judgment notification for *pro se* litigants, *see* dkt. # 15–1. This notification provided, *inter alia,*
>
> Pursuant to Local Rule 7.1 of the Northern District of New York, you are required to submit the following papers in opposition to this motion: (I) a memorandum of law (containing relevant factual and legal argument); (ii) one or more affidavits in opposition to the motion and (iii) a short and concise statement of material facts as to which you claim there are genuine issues in dispute. These papers must be filed and served in accordance with the time set by Local Rule 7.1.
>
> If you do not submit a short and concise statement of material facts as to which you claim there are genuine issues in dispute, all material facts set forth in the statement filed and served by the defendant(s) shall be deemed admitted.

### II. STANDARD OF REVIEW

The Court may grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5080404 (N.D.N.Y.)

(Cite as: 2011 WL 5080404 (N.D.N.Y.))

issues that can only be resolved at trial. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995). "[P]roceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment." *Viscusi v. Proctor & Gamble,* 2007 WL 2071546, at * 9 (E.D.N.Y. July 16, 2007).

In determining whether to grant summary judgment, the Court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," *Matsushita.,* 475 U.S. at 586, or by a factual argument based on "conjecture or surmise." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). In this regard, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in the pleadings, *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998).

*2 The Local Rules of the Northern District require a party moving for summary judgment to submit a "Statement of Material Facts" which sets forth, with citations to the record, each material fact about which the moving party contends there exists no genuine issue. N.D.N.Y.L.R. 7.1(a)(3). Once a properly supported Local Rule 7.1(a)(3) Statement is submitted, the party opposing the motion must

> file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. *Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.*

*Id.* (underscoring in original).

The responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly. *See N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.,* 426 F.3d 640, 648–49 (2d Cir.2005) (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1(a) (3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations."); *Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir.1998) (*per curiam* ) (accepting as true material facts contained in unopposed local rule statement of material facts); *Meaney v. CHS Acquisition Corp.,* 103 F.Supp.2d 104, 108 (N.D.N.Y.2000) (deeming movant's Rule 7.1(a)(3) Statement admitted where non-movant's response "set forth *no* citations—specific or otherwise—to the record") (emphasis in original); *McKnight v. Dormitory Auth. of State of N.Y.,* 189 F.R.D. 225, 227 (N.D.N.Y.1999) (McAvoy, J.) ("deem[ing] the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted"); *Osier v. Broome County,* 47 F.Supp.4 311, 317 (N.D.N.Y.1999) (McAvoy, J.) (deeming admitted all facts in defendants' Rule 7.1(a) (3) statement where "plaintiff submitted thirteen pages of purported facts without any indication where those facts can be located in the record").

While the Court must construe a *pro se* litigant's pleadings and papers liberally and interpret them to raise the strongest arguments that they suggest, *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2003); [FN2] *Veloz v. New York,* 339 F.Supp.2d 505, 513 (S.D.N.Y.2004), the application of this lenient standard does not relieve a *pro se* litigant of the requirement to follow the procedural formalities of Local Rule 7.1(a)(3). *Govan,* 289 F.Supp.2d at 295; *see also Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Edwards v. INS,* 59 F.3d 5, 8 (2nd Cir.1995) ("While a *pro se* litigant's pleadings must be construed liberally, ... *pro se* litigants

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5080404 (N.D.N.Y.)

(Cite as: 2011 WL 5080404 (N.D.N.Y.))

generally are required to inform themselves regarding procedural rules and to comply with them.").

> FN2. To construe pleadings liberally means the Court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Govan*, 289 F.Supp.2d at 295.

## III. BACKGROUND

**\*3** Because Plaintiff has not submitted an opposing Statement of Material Facts, the properly supported facts set forth in Defendant's Statement of Material Facts are deemed admitted for purposes of this motion. N.D.N.Y.L.R. 7.1(a)(3). Except where indicated otherwise, the following facts are taken from Defendant's Statement of Material Facts.

Defendant Brad A. Boyer is a uniformed New York State Trooper assigned to the Owego Barracks of Troop C of the New York State Police, headquartered in Sidney, New York. On October 22, 2008, he responded to a call from an individual named Carol A Smith who complained that Plaintiff Jason Ketchuck, one of the sons of her next door neighbor, had repeatedly driven his vehicle through her yard, and that the most recent occasion on which this had occurred was at approximately 7:38 AM on October 22, 2008. She complained that this course of conduct had caused rutting and damage to her front lawn.

Upon responding to the call, Trooper Boyer observed the rutting and damage to Ms. Smith's lawn alongside the roadway in front of her house, and took a series of photographs of the lawn. Trooper Boyer took a sworn statement from Ms. Smith on October 22, 2008, and she signed a Complaint against Jason A. Ketchuck on the same date accusing him of Trespass, in violation of New York Penal Law § 140.05. Based upon the information provided by Ms. Smith and the property damage that he observed and photographed on October 22, 2008, Trooper Boyer also prepared and signed an Information charging Jason A. Ketchuck with Criminal Mischief in the Fourth Degree.

On October 31, 2008, Trooper Boyer requested that Plaintiff come to the Owego Barracks to meet with him

concerning Ms. Smith's complaint, which he did. Mr. Ketchuck admitted that he had been the driver of the small grey car on the date and time that had been the subject of Ms. Smith's complaint; however, he denied that he had driven the car on her lawn. Mr. Ketchuck also contended that the ruts near the road were on property that was abandoned by the Town of Owego in 1934 and that, although Ms. Smith "extended the landscaping of her property onto the abandoned road without the Town's permission" seven (7)years prior, his father was claiming ownership of this property in a quite title action in New York State Supreme Court. Jason Ketchuck Aff., ¶ 9; *see* James Ketchuck Aff., ¶¶ 2, 8. Ketchuck's father also contends that, prior to charges being levied against his son, he met with Trooper Boyer and attempted to show Trooper Boyer "property maps, surveys, deeds, and town records which set forth the property lines and boundaries of the property owned by [Ms.] Smith," but Trooper Boyer "refused to look at them." James Ketchuck Aff., ¶¶ 6–7.

Trooper Boyer issued Plaintiff an appearance ticket charging him with Trespass in violation of Penal Law § 140.05 and Criminal Mischief in the Fourth Degree in violation of Penal Law § 145. After issuing the appearance ticket to Jason A. Ketchuck on October 31, 2008, Trooper Boyer did not have any further involvement in the prosecution of this case. The charges were Dismissed in the Interest of Justice in the Owego Town Court on May 27, 2009.

## IV. DISCUSSION

### a. False Arrest

**\*4** Plaintiff claims that he was falsely arrested by Defendant. A false arrest claim, whether brought under federal or state law,[FN3] will fail if, at the time of the seizure, the arresting officer had probable cause to make an arrest. *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir.2003); *Smith v. Edwards*, 175 F.3d 99, 105 (2d Cir.1999); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996); *see Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir.2006) ("Under New York law, the existence of probable cause is an absolute defense to a false arrest claim."). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5080404 (N.D.N.Y.)

(Cite as: 2011 WL 5080404 (N.D.N.Y.))

known to the arresting officer at the time of the arrest." *Devenpeck v. Alford,* 543 U.S. 146, 125 S.Ct. 588, 593, 160 L.Ed.2d 537 (2004) (citing *Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003)).

> FN3. Plaintiff asserts claims only under federal law pursuant to 42 U.S.C. § 1983. However, given Plaintiff's *pro se* status, the Court examines the potential supplemental state law claims that might be asserted.

"Probable cause exists if at the time of the arrest 'the facts and circumstances within th[e officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' " *Amore v. Novarro,* 624 F.3d 522, 536 (2d Cir.2010 (citing *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)); *see Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 414 (2d Cir.1999)." The relevant inquiry is whether "probable cause existed to arrest a defendant" and "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly,* 439 F.3d at 154; *see Devenpeck v. Alford,* 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (probable cause to arrest can exist even if offense relied upon is not even "closely related" to offense charged). "A probable cause determination does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment." *Hahn v. County of Otsego,* 820 F.Supp. 54, 55 (N.D.N.Y.1993), *aff'd,* 52 F.3d 310 (2d Cir.1995). "[T]he eventual disposition of the criminal charges is irrelevant to the probable cause determination." *Hahn,* 820 F.Supp. at 55 (citing *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)).

"It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000) (quoting *Miroslavsky v. AES Eng'g Soc'y,* 808 F.Supp. 351, 355 (S.D.N.Y.1992), *aff'd* 993 F.2d 1534 (2d Cir.1993)). "If policemen arrest a person on the basis

of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable ... merely because it later turns out that the complaint was unfounded." *Lee v. Sandberg,* 136 F.3d 94, 103 (2d Cir.1997); *see Calderola v. Calabrese,* 298 F.3d 156, 165 (2d Cir.2002) ("[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that might not be the case."). Once a police officer has probable cause, he need not explore "every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. New York City Transit Authority,* 124 F.3d 123, 128 (2d Cir.1997); *see Coons v. Casabella,* 284 F.3d 437, 441 (2d Cir.2002) ("[P]olice officers are not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); *Hotaling v. LaPlante,* 67 F.Supp.2d 517, 522 (N.D.N.Y.2001) (valid probable cause to arrest rested upon information supplied by an identified witness, and even though a further investigation by the Trooper would have led to a contradictory conclusion, Trooper's conduct was not unreasonable under the circumstances).

**\*5** Where the facts surrounding the arrest are uncontroverted, the determination as to whether probable cause existed may be made by the Court as a matter of law. *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). Even where factual disputes exist, a § 1983 claim may fail if the plaintiff's version of events is sufficient to establish probable cause to arrest. *Mistretta v. Prokesch,* 5 F.Supp.2d 128, 133 (E.D.N.Y.1998).

Here, the alleged victim provided Defendant with a sworn statement that Plaintiff repeatedly drove his vehicle over a portion of her lawn causing damage to it. The victim's statement was corroborated by the tire marks and the ruts in the lawn which Defendant observed and photographed; and by Plaintiff's admission that he was the driver of the car alleged to have caused damage to the lawn. These facts provided more than ample probable cause for Defendant to believe that Plaintiff committed the offense of Trespass under Section 140.05 of the New York Penal Law.[FN4] In this regard, the facts provided probable cause to believe that Plaintiff had intentionally driven his car across Ms. Smith's lawn on October 22, 2008; that she

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5080404 (N.D.N.Y.)

(Cite as: 2011 WL 5080404 (N.D.N.Y.))

did not consent to his doing so; and that Plaintiff's conduct on his neighbor's property, which had caused observable damage to the lawn, was not conduct that Plaintiff was licensed or privileged to engage in. *See Caidor v. Harrington,* 2009 WL 174958 (N.D.N.Y.2009) (Suddaby, J.) (granting summary judgment dismissing § 1983 false arrest claim based on arrest for violation of P.L. § 140.05). Moreover, these same facts provided ample probable cause to believe that Plaintiff had committed the offense of Criminal Mischief in the Fourth Degree in violation of N.Y. Penal Law § 145 [FN5] in that the facts, including the allegation that Plaintiff's car was repeatedly driven on the lawn, provided probable cause to believe that Plaintiff intentionally damaged Ms. Smith's property by driving his car on it.

> FN4. Section 140.05 of New York Penal Law provides that "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises. Trespass is a violation." "Premises" is defined to include any "building" or "real property." Penal Law 140.00(1). Penal Law § 140.00(5) provides that a person "enters or remain(s) unlawfully upon premises when he is not licensed or privileged to do so."

> FN5. In relevant part, Penal Law § 145 provides:

> A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she:

> 1. Intentionally damages property of another person[.]

> "While no statutory definition of 'damages' is provided, it is commonly recognized that the term contemplates 'injury or harm to property that lowers its value or involves loss of efficiency' and that only 'slight' damage must be proved" to establish a violation of Penal Law § 145. *People v. Collins,* 288 A.D.2d 756, 758, 733 N.Y.S.2d 289 (3d Dept.2001).

Because a police officer need not explore every

theoretically plausible claim of innocence before making an arrest, and because the existence of probable cause is determined by a standard far less burdensome than determining guilt, Defendant's probable cause determination is not negatively affected by Plaintiff's assertion of innocence or by Defendant's failure to review the property maps or surveys. [FN6] A police officer is not required to conduct an investigation if the facts demonstrate that probable cause exists that an offense has been committed. Accordingly, Defendant was not required to conduct independent research into who actually owned the property claimed by Ms. Smith as her front lawn before issuing the appearance ticket. This is especially so in light of the undisputed facts that the tire marks were on property abutting Ms. Smith's front lawn and on a piece of property over which Ms. Smith purportedly "extended the landscaping of her property" some seven (7) years prior to the incident. These facts provided reasonable corroboration for Ms. Smith's sworn statement that the tire marks and ruts were on her property.

> FN6. Defendant denies that the purported property dispute regarding the subject portion of Ms. Smith's front yard was ever articulated to him. Regardless, even if a property dispute regarding the subject property was articulated to Defendant, he was not required to a perform a title search or make additional inquiry to resolve the dispute in light of the sworn statement by Ms. Smith that the property in question belonged to her.

**\*6** Even assuming, *arguendo,* that actual probable cause did not exist to satisfy the demands of the Fourth Amendment, arguable probable cause existed such to entitle Defendant to qualified immunity. *See Zellner v. Summerlin,* 494 F.3d 344, 369–70 (2d Cir.2007) (discussing "arguable probable cause" as basis for qualified immunity). Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Amore,* 624 F.3d at 536 (citing *Walczyk v. Rio,* 496 F.3d 139, 163 (2d Cir.2007)). To determine whether an officer had arguable probable cause, the objective information he possessed at the time

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5080404 (N.D.N.Y.)

(Cite as: 2011 WL 5080404 (N.D.N.Y.))

of the arrest is examined, not the "subjective intent, motives or beliefs" of the officer. *Id.* Here, the information Defendant possessed at the time he issued the appearance ticket provided an objectively reasonable basis for him to believe that probable cause existed for the two offenses with which Plaintiff was charged. Accordingly, Defendant is entitled to qualified immunity on the false arrest claim because it was objectively reasonable for him to believe that his acts did not violate Plaintiff's clearly established rights under the Fourth Amendment. *Id.* at 530 ( [Q]ualified immunity ... is sufficient to shield executive employees from civil liability under § 1983 if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable [for them] to believe that their acts did not violate these clearly established rights."). For these reasons, the false arrest claim is dismissed.

**b. Malicious Prosecution**

Based on the undisputed facts that supplied Defendant with actual probable cause to believe that Plaintiff committed the two offenses for which he was charged, the malicious prosecution claim also fails as a matter of law. *See Rohman v. New York City Transit Auth.,* 215 F.3d 208, 215 (2d Cir.2000) (an element of a malicious prosecution claim is that the defendant lacked probable cause to believe the proceeding could succeed).

Moreover, to state a claim for malicious prosecution under either § 1983 or New York state common law, Plaintiff must establish, *inter alia,* "termination of the proceeding in [the accused's] favor." *Green v. Mattingly,* 585 F.3d 97, 104 (2d Cir.2009). Whether termination is deemed favorable to the accused is determined in accordance with applicable state law, here, New York law. *Hygh v. Jacobs,* 961 F.2d 359, 367 (2d Cir.1992). Proceedings are "terminated in favor of the accused" when their final disposition is such as to indicate the accused is not guilty. *DiBlasio v. City of New York,* 102 F.3d 654, 657 (2d Cir.1996). "Where a prosecution did not result in an acquittal, it is generally not deemed to have ended in favor of the accused, for purposes of a malicious prosecution claim, unless its final disposition is such as to indicate the accused's innocence." *Fulton v. Robinson,* 289 F.3d 188, 196 (2d Cir.2002). A dismissal "in the interest of justice" under New York Criminal Procedure Law § 170.40 "cannot provide the favorable termination required

as the basis for a claim of malicious prosecution." *Hygh,* 961 F.2d at 368 (citing *Ryan v. N.Y. Tel. Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487, 493 (1984)). Thus, Plaintiff cannot establish the "favorable termination" element of his malicious prosecution claim.

**\*7** Further, the undisputed facts are that Trooper Boyer never had any prior contact with either Mr. Ketchuck or Ms. Smith before this incident. He attested that he harbored no improper motive in instituting the charges, and that he issued the appearance ticket and filed the accusatory instruments in the Town Court only because of his good faith belief that there was the probable cause to pursue such charges. *See* Boyer Aff. ¶¶ 11, 13. There are no facts from which a reasonable fact finder could conclude that Trooper Boyer instituted the underlying proceeding with a malicious motive or intent such to state a viable malicious prosecution claim. *See Manganiello v. City of New York,* 612 F.3d 149, 161 (2d Cir.2010) (to prevail on a malicious prosecution claim, a plaintiff must establish, *inter alia,* that the proceeding was begun with malice); *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir.1996) (malice may be proven by showing that the prosecutor had "a wrong or improper motive, something other than a desire to see the ends of justice served") (internal quotation marks omitted).

Finally, for the reason discussed above with regard to Trooper Boyer's entitlement to qualified immunity on the false arrest charge, he is also entitled to qualified immunity on the malicious prosecution claim. That is, under the circumstances it was objectively reasonable for reasonable officers to believe that there was probable cause to commence the prosecution for the offenses charged. Accordingly, the malicious prosecution claim is dismissed.

**c. Abuse of Process**

Plaintiff's third claim against Trooper Boyer is for malicious abuse of process in connection with the institution of the Town Court proceeding. "In the criminal context, malicious abuse of process is by definition a denial of procedural due process.... Procedural due process forbids the use of legal process for a wrongful purpose." *Abreu v. Romero,* 2010 WL 4615879, at \*8

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 5080404 (N.D.N.Y.)

(Cite as: 2011 WL 5080404 (N.D.N.Y.))

(S.D.N.Y. Nov.9, 2010) (citation omitted). To state a claim for the malicious abuse of process, Plaintiff must prove that the Defendant (1) employed regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *Savino v. City of New York,* 331 F.3d 63, 76 (2d Cir.2003). "The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim." *Lopez v. City of New York,* 901 F.Supp. 684, 691 (S.D.N.Y.1995) (citing PSI *Metals v. Firemen's Ins. Co.,* 839 F.2d 42, 43 (2d Cir.1988)). In other words, Plaintiff "must claim that [Defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino,* 331 F.3d at 77. "In New York, such wrongful purposes have included economic harm, extortion, blackmail, and retribution." *Abreu,* 2010 WL 4615879, at *8 (citing *Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n,* 38 N.Y.2d 397, 404, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975)).

**\*8** Plaintiff's malicious abuse of process claim fails as the facts are devoid of any allegations concerning any "collateral objective" that Defendants may have had in instituting criminal charges against Plaintiff. There is no factual basis upon which a reasonable fact finder could conclude that the issuance of the appearance tickets to Plaintiff was motivated by anything other than Trooper Boyer's good-faith belief that he had probable cause to conclude that Plaintiff had engaged in conduct that constituted trespass and/or criminal mischief. Furthermore, there is no evidence that Trooper Boyer had any involvement in the prosecution of the case against Plaintiff after he issued the appearance tickets on October 31, 2008. Under these uncontested facts, the claim fails as a matter of law.

Finally, and assuming *arguendo* that a viable malicious prosecution claim existed, Trooper Boyer is entitled to qualified immunity on the claim in that there existed, at the least, arguable probable cause to commence the criminal proceeding. This arguable probable cause provides an objectively reasonable justification for issuing process commencing the underlying proceeding. *Cf. Abreu,* 2010 WL 4615879, at *8 ("While probable cause

is not an element of an abuse of process claim, under New York law, a showing of probable cause at the time process issued suffices ... to establish excuse or justification for the purposes of a defense to abuse of process.") (internal quotation marks and citation omitted). Accordingly, the abuse of process claim is dismissed.

**V. CONCLUSION**

For the reasons discussed above, Defendant's motion for summary judgment [dkt. # 15] is **GRANTED** and all claims in this case are **DISMISSED.**

**IT IS SO ORDERED.**

N.D.N.Y.,2011.

Ketchuck v. Boyer
Not Reported in F.Supp.2d, 2011 WL 5080404 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 967064 (N.D.N.Y.)

(Cite as: 2012 WL 967064 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Gary GILLARD, Plaintiff,
v.
Scott HAMEL and Peter McNally, Defendants.
Civ. Action No. 9:09–CV–0431 (TJM/DEP).

Feb. 24, 2012.
Gary Gillard, Pine City, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General, State of New York, Michael G. McCartin, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** *Pro se* plaintiff Gary Gillard, a New York State prison inmate, has commenced this action pursuant to 42 U.S.C. § 1983, alleging that he was deprived of his civil rights by the defendants during the period of his confinement. As a result of prior court decisions, the sole remaining claims in the action are asserted against two corrections officers employed at the prison facility in which plaintiff was housed at the relevant times, and stem from an incident in which defendants allegedly encouraged a fellow inmate to attack Gillard, failed to protect him from the inmate's assault, and then applied excessive force in subduing him. Plaintiff's complaint seeks both monetary damages and injunctive relief, including a declaration that he be transferred to another prison facility.[FN1]

> FN1. A federal court has no authority to decide an issue when the relief sought can no longer be given, or is no longer needed. *Martin–Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir.1983). It is well settled in this circuit that transfer from a prison facility moots an action for injunctive relief involving the transferring facility. *Prins v.*

> *Coughlin,* 76 F.3d 504, 506 (2nd Cir.1996) (citing *Young v. Coughlin,* 866 F.2d 567, 568 n. (2d Cir.), *cert. denied,* 492 U.S. 909, 109 S.Ct. 3224, 106 L.Ed.2d 573 (1989), and *Beyah v. Coughlin,* 789 F.2d 986, 988 (2d Cir.1986)); *Candelaria v. Greifinger,* No. 96–CV–0017, 1998 WL 312375, at \*2 (N.D.N.Y. June 8, 1998) (Pooler, J. and Scanlon, M.J.). In this case, plaintiff's request for a transfer has been rendered moot by virtue of the fact that he is now confined in a correctional facility other than the one at which the relevant events occurred.

Currently pending before the court is an application by the remaining two defendants seeking the entry of summary judgment dismissing plaintiff's remaining claims, both on merits and on the basis of qualified immunity. For the reasons set forth below, I recommend that defendants' motion be granted.

I. *BACKGROUND*[FN2]

> FN2. In light of the procedural posture of this case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of the plaintiff. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003).

Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Corrections and Community Services ("DOCCS"). *See generally* Complaint (Dkt. No. 1); *see also* Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 56–6) ¶ 1.[FN3] At the time the relevant events in this action occurred plaintiff was designated to the Great Meadow Correctional Facility ("Great Meadow"), located in Comstock, New York. Complaint (Dkt. No. 1) Preliminary Statement.

> FN3. As will be seen, by his failure to properly oppose defendants' motion, plaintiff is deemed to have admitted the allegations of fact set forth in Defendants' Local Rule 7.1(a)(3) Statement. *See*

Slip Copy, 2012 WL 967064 (N.D.N.Y.)

(Cite as: 2012 WL 967064 (N.D.N.Y.))

pp. 7–9, *post*.

While as originally constituted plaintiff's complaint in this action broadly alleged the existence of an ongoing conspiracy and that he was continuously harassed by prison officials at Great Meadow, his claims have been winnowed significantly, and now center upon an incident occurring at that facility on March 13, 2009. On that date, according to the plaintiff, Corrections Officer Hamel directed another inmate to attack him and then stood by during the incident, refusing to stop the ensuing fight, and later utilizing excessive force against the plaintiff until the encounter had ended. Complaint (Dkt. No. 1) ¶ 30; Defendants' Local Rule 7.1.(a)(3) Statement (Dkt. No. 56–6) ¶ 3. Plaintiff alleges that defendant Hamel placed his knee into Gillard's kidney and lower back area, and placed his forearm on Gillard's neck while in the process of placing restraints on his wrists, and additionally placed his knee on plaintiff's neck area "with all of his weight." Complaint (Dkt. No. 1) ¶ 30. Plaintiff alleges that defendant Hamel's actions caused aggravation of his pre-existing cervical and lumbar back spine injuries. *Id.* at ¶¶ 30, 32.

As a result of the incident plaintiff was issued a misbehavior report accusing him of violent conduct and fighting. *See* McCartin Decl. (Dkt. No. 56–2) Exh. B. The issuance of that misbehavior report was based upon an investigation which, according to prison officials, revealed that Gillard was the aggressor and initiated the fight with his fellow inmate. *See id.* That misbehavior report led to the convening of a Tier II hearing, in which plaintiff refused to participate, and a subsequent finding of guilt with a corresponding sentence which included a thirty-day period of disciplinary keeplock confinement and a corresponding loss of package, commissary, and telephone privileges. *See* McCartin Decl. (Dkt. No. 56–2) Exh. B.

## II. *PROCEDURAL HISTORY*

**\*2** Plaintiff commenced this action on April 13, 2009. Dkt. No. 1. In his complaint Gillard named several defendants, including David Rock, the Superintendent at Great Meadow; Corrections Counselor Howard Osborne; Corrections Sergeants Michael Hoy and Matthew Sabo; Corrections Officers Michael Rovelli, Scott Hamel, Alfred

Aubin, Peter McNally, Smith, and Ronald Lamb; Bruce Porter, a Maintenance Assistant at the facility; and two John Doe defendants. *See id.* Although those claims were not stated as discrete causes of action, plaintiff's complaint asserted that the defendants have 1) violated his right to due process; 2) denied him the right to correspond with those outside of the facility; 3) denied him access to the courts; 4) unlawfully tampered with his incoming and outgoing mail; 5) subjected him to cruel and unusual punishment through the use of excessive force and the denial of power, television, and radio without due process; 6) issued him false misbehavior reports; and, 7) breached their duty to protect him from harm. *See generally* Plaintiff's Complaint (Dkt.No.1).

Following service of process all of the named defendants, with the exception of Scott Hamel and Peter McNalley, filed a pre-answer motion seeking dismissal of plaintiff's complaint for failure to state a claim upon which relief may be granted. Dkt. No. 27. That motion resulted in my issuance on August 30, 2010 of a report recommending that defendants' motion be granted and that all claims in the action except those against defendants Hamel and McNally be dismissed, with leave to replead. Dkt. No. 52. That report and recommendation was adopted by Senior District Judge Thomas J. McAvoy on December 13, 2010. Dkt. No. 54. Despite being granted leave to replead, plaintiff has not filed an amended complaint in the action.

On June 7, 2011, following the completion of discovery which included the taking of plaintiff's deposition, the remaining two defendants moved for the entry of summary judgment dismissing plaintiff's remaining claims.[FN4] Dkt. No. 56. In their motion defendants argue that any force alleged to have been applied against the plaintiff did not rise to a level of constitutional significance and that his excessive force claim is therefore subject to dismissal, additionally asserting their entitlement to qualified immunity from suit. *See generally id.* Plaintiff has since responded in opposition to defendants' motion. Dkt. No. 61.

> FN4. Plaintiff's deposition began on a sour note, with plaintiff refusing to answer questions posed by defendants' counsel concerning his criminal history and quarreling over the refusal. *See*

Slip Copy, 2012 WL 967064 (N.D.N.Y.)

(Cite as: 2012 WL 967064 (N.D.N.Y.))

McCartin Decl. (Dkt. No. 56–2) Exhs. A at pp. 9–14/95.

Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

### III. *DISCUSSION*

A. *Plaintiff's Failure to Submit a Local Rule 7.1(a)(3) Statement*

Among the materials submitted by the defendants in support of their motion is a statement of material facts which, they contend, are not in dispute, as required by Northern District of New York Local Rule 7.1(a)(3). In his opposition papers, plaintiff has failed to address that statement. Before turning to the merits of defendants' motion the court must first address the significance, if any, of this failure.

**\*3** By its terms, Local Rule 7.1(a)(3) provides that "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N .D.N.Y.L.R. 7.1(a)(3). Courts in this district have consistently enforced Rule 7.1(a)(3) and its predecessor, Rule 7.1(f), by deeming facts set forth in a statement of material facts not in dispute to have been admitted based upon an opposing party's failure to properly respond. *See, e.g., Elgamil v. Syracuse Univ.,* No. 99–CV–611, 2000 WL 1264122, at \*1 (Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 292 (2d Cir.2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).[FN5]

FN5. Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

In this instance, the plaintiff was pointedly warned of the consequences of failing to properly respond to

defendants' motion. In their notice of motion, defendants specifically advised Gillard of the requirements of Local Rule 7.1(a)(3), noting that "[i]n the absence of such a statement [responding to Defendants' Local Rule 7.1(a)(3) Statement], all material facts set forth in defendants' statement of material facts will be deemed to be admitted by the Court." *See* Notice of Motion (Dkt. No. 56) at p. 2. In addition, the court's form notice to *pro se* plaintiffs of the consequences of failing to respond properly to a summary judgment motion, which was attached to plaintiff's notice of motion, advises in relevant part that

[i]f you do not submit a short and concise statement of material facts as to which you claim there are genuine issues in dispute, all material facts set forth in the statement filed and served by the defendant(s) shall be deemed admitted.

*See* Notification of Consequences (Dkt. No. 56–1). In light of these admonitions and plaintiff's failure to provide a Local Rule 7.1(a)(3) Statement, I recommend that the court deem him to have admitted each of the statements of fact set forth in Defendants' Local Rule 7.1(a)(3) Statement. [FN6]

FN6. As to those facts not contained in the Defendants' Local Rule 7 .1(a)(3) Statement, I assume for purposes of this motion that plaintiff's version of those facts is true, since plaintiff is entitled to the benefit of all inferences at this stage. *Wright v. Coughlin,* 132 F.3d 133, 137 (2d Cir.1998).

B. *Summary Judgment Standard*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Security Ins. Co. of Hartford v.*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 967064 (N.D.N.Y.)

(Cite as: 2012 WL 967064 (N.D.N.Y.))

*Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

**\*4** A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620–21 (2d Cir.1999) (noting an obligation of court to consider whether *pro se* plaintiff understood the nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). Summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

C. *Merits of Plaintiff's Claims*

1. *Defendant Hamel*

Plaintiff's claims against defendant Hamel appear to have two components. The first alleges that he directed a fellow inmate to attack the plaintiff and then stood idly by, failing to protect him during the course of the ensuing fight. Plaintiff further asserts that after the fight Corrections Officer Hamel applied excessive force, twisting his wrists, placing his knee onto his neck, and rubbing his face on the ground during the course of placing his hands in restraints.

a. *Excessive Force*

Plaintiff's complaint asserts a cause of action brought under the Eighth Amendment, which outlaws punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291, 50 L.Ed.2d 251 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle* ). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; it is against this backdrop that the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981)).

**\*5** A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084 (citations and quotations omitted); *Griffen v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999). When an inmate alleges the use of excessive force by a corrections employee the lynchpin inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 998–999, 117 L.Ed.2d 156 (1992) (applying *Whitley* to all excessive force claims); *Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1085 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

Slip Copy, 2012 WL 967064 (N.D.N.Y.)

(Cite as: 2012 WL 967064 (N.D.N.Y.))

Analysis of claims of cruel and unusual punishment requires both objective examination of the conduct's effect and a subjective inquiry into the defendant's motive for his or her conduct. *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009) (citing *Hudson,* 503 U.S. at 7–8, 112 S.Ct. at 999 and *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999)). As was emphasized by the United States Supreme Court in *Wilkins v. Gaddy,* however, after *Hudson* the "core judicial inquiry" is focused not upon the extent of the injury sustained, but instead whether the nature of the force applied was nontrivial. —— U.S. ——, ——, 130 S.Ct. 1175, 1179, 175 L.Ed.2d 995 (2010) (per curiam). Accordingly, when considering the subjective element of the governing Eighth Amendment test a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness since, as the Supreme Court has noted,

> [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.... This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

*Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000 (citations omitted); *Velasquez v. O'Keefe,* 899 F.Supp. 972, 973 (N.D.N.Y.1995) (McAvoy, C.J.) (quoting *Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000); *see Romaine v. Rewson,* 140 F.Supp.2d 204, 211 (N.D.N.Y.2001) (Kahn, J.). Even a *de minimis* use of physical force can constitute cruel and unusual punishment if it is "repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 9–10, 112 S.Ct. 1000 (citations omitted).

With its focus on the harm done, the objective prong of the inquiry is case specific and relies upon "contemporary standards of decency." *Wright,* 554 F.3d at 268 (quoting *Hudson,* 503 U.S. at 8, 112 S.Ct. at 1000) (internal quotations omitted)). When addressing this component of an excessive force claim under the Eighth Amendment calculus, the court can consider the extent of the injury suffered by the inmate plaintiff. While the absence of significant injury is certainly relevant, it is not dispositive. *Hudson,* 503 U.S. at 7, 112 S.Ct. at 999. The extent of an inmate's injury is but one of the factors to be considered in determining a prison official's use of force was "unnecessary and wanton"; courts should also consider the need for force, whether the force was proportionate to the need, the threat reasonably perceived by the officials, and what, if anything, the officials did to limit their use of force. *Whitley,* 475 U.S. at 321, 106 S.Ct. at 1085 (citing *Johnson,* 481 F.2d at 1033). "But when prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency are always violated.... This is true whether or not significant injury is evident.' " *Wright,* 554 F.3d at 268–69 (quoting *Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000).

**\*6** That is not to say that "every malevolent touch by a prison guard gives rise to a federal cause of action." *Griffen,* 193 F.3d at 91 (citing *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993)); *see also Johnson,* 481 F.2d at 1033 ("Not every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). Where a prisoner's allegations and evidentiary proffers, if credited, could reasonably allow a rational factfinder to find that corrections officers used force maliciously and sadistically, however, summary judgment dismissing an excessive use of force claim is inappropriate. *Wright,* 554 F.3d at 269 (citing *Scott v. Coughlin,* 344 F.3d 282, 291 (2d Cir.2003) (reversing summary dismissal of prisoner's complaint, though suggesting that prisoner's evidence of an Eighth Amendment violation was "thin" as to his claim that a corrections officer struck him in the head, neck, shoulder, wrist, abdomen, and groin, where the "medical records after the ... incident with [that officer] indicated only a slight injury")) (other citations omitted).

During his deposition plaintiff testified that while he and a fellow inmate were on the ground fighting, defendant Hamel and other officers attempted to end the altercation. Defendants' Local Rule 7 .1(a)(3) Statement (Dkt. No. 56–6) ¶ 5; McCartin Decl. (Dkt. No. 56–2) Exh. 1 at p. 29. During that endeavor defendant Hamel took plaintiff's hands, twisted his wrists, and placed his knee on his neck. McCartin Decl. (Dkt. No. 56–2) Exh. 1 at p. 29. At no time did Corrections Officer Hamel punch, kick or throw Gillard into the wall. *Id.* at p. 32. While plaintiff

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 967064 (N.D.N.Y.)

(Cite as: 2012 WL 967064 (N.D.N.Y.))

claims that his neck was injured as a result of the actions, he also admitted having had a previous serious neck injury. *Id.* at p. 71.

The application of the Eighth Amendment's cruel and unusual punishment provision to claims of excessive force is extremely fact specific. *Dukes v. Troy Housing Auth.*, No. 1:08–CV–479, 2011 WL 1261317, at *7 (N.D.N.Y. Mar.31, 2011) (Scullin, S.J.). The question ultimately revolves around the need for force to maintain and restore discipline and the extent of force utilized. In this case, it is clear that corrections officers, including defendant Hamel, were faced with situation of two inmates fighting and the need to restore discipline and to apply the amount of necessary force to accomplish that end. While plaintiff alleges their use of force, there is no indication that he received any serious injury as a result of their actions, nor does it appear from his complaint that the force utilized was excessive given the situation presented. Simply stated, the force which plaintiff claims was applied was *de minimis,* in light of the circumstances, and insufficient to implicate the protections of the Eighth Amendment against cruel and unusual punishment. *See Smith v. City of New York*, No. 04 Civ. 3286, 2010 WL 3397683, at * 11 (S.D.N.Y.2010) (granting summary judgment as to excessive force claim finding "it does not appear from plaintiff's own testimony that the handcuffs were unreasonably tight, and plaintiff's injuries were clearly *de minimis.")*; *see also Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997) (claim that inmate was bumped, grabbed, elbowed, and pushed by two officers "not sufficiently serious or harmful" to meet objective element); *Brown v. Busch*, 954 F.Supp. 588, 595–96 (W.D.N.Y.1997) (two officers pushed inmate into cell, causing small superficial abrasion on inmate's back; amount of force used was "clearly *de minimis ")*; *Maguire v. Coughlin*, 901 F.Supp. 101, 104 (N.D.N.Y.1995) (summary judgment granted dismissing inmate's claim that he was "physically manhandled" during prison transfer; court found no evidence "that the defendants used more than *de minimus* [sic] force against plaintiff, or that their use of de *minimus* [sic] force was repugnant to the conscience of mankind.").

b. *Failure to Protect*

**\*7** Undeniably, prison officials have a responsibility to provide a safe environment for prisoners, and an inmate can establish an Eighth Amendment violation by showing that he or she "incarcerated under conditions posing a substantial risk of serious harm and that prison official's acted with "deliberate indifference" to the inmate's safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). A corrections worker who, though not participating, if present when an assault upon an inmate occurs may nonetheless bear responsibility for any resulting constitutional deprivation. *See Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). When examining a failure to protect claim under the Eighth Amendment, a court must determine whether the inmate has demonstrated that 1) he or she was incarcerated under conditions posing a substantial risk of serious harm, and that 2) prison officials exhibited deliberate indifference to the inmate's plight. *Farmer,* 511 U.S. at 834, 837, 114 S.Ct. at 1977, 1979; *Matthews,* 36 F.Supp.2d at 124–25; *Coronado v. Lefevre,* 886 F.Supp. 220, 224 (N.D.N.Y.1995) (Scullin, J.). As can be seen, this analysis entails both an objective and subjective inquiry.

In objective terms, a plaintiff must prove that an alleged deprivation is "sufficiently serious" such that it denied him or her the "minimal civilized measure of life's necessities." *Dawes v. Walker,* 239 F.3d 489, 493–94 (2nd Cir.2001) (internal quotations and citations omitted), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Specifically, as noted above, in situations where an inmate's safety is at issue, that person must demonstrate that he or she was incarcerated under conditions posing a substantial risk of serious harm. *Farmer,* 511 U.S. at 834, 837, 114 S.Ct. at 1977, 1979; *Dawes,* 239 F.3d at 493; *Matthews,* 36 F.Supp.2d at 124–25.

To demonstrate that defendants were deliberately indifferent to his or her plight, a plaintiff must show that prison officials actually knew of, but disregarded, an excessive risk to his or her health and safety—"the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979; *Matthews,* 36 F.Supp.2d at 124–25.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 967064 (N.D.N.Y.)

(Cite as: 2012 WL 967064 (N.D.N.Y.))

In this instance, plaintiff's deposition testimony is clear and unequivocal. Prior to the fight, he did not feel that he needed protective custody from any other inmate. *See* McCartin Decl. (Dkt. No. 56–2) Exh. 1 at p. 37. By his own admission, during the fight the other inmate never even made contact with plaintiff, but instead failed at two attempts to punch Gillard. *Id.* With the other inmate's third effort to swing at him, Gillard grabbed his attacker, tripped him, and brought him down to the floor. *Id.* As plaintiff readily acknowledged at his deposition, he suffered no harm as a result of the fight with his fellow inmate. *See* McCartin Decl. (Dkt. No. 56–2) Exh. 1 at p. 37.

**\*8** Objectively, plaintiff's testimony itself effectively precludes a finding that he was exposed to conditions posing a substantial risk to his safety. Plaintiff's speculation that defendant Hamel directed the other inmate to attack Gillard is unsupported by the record, and contradicted by denials of both Hamel and the inmate involved. *See* Plaintiff's Motion Response (Dkt. No. 61) pp. 26/40 and 29/40. Even when crediting plaintiff's version of the events that transpired, it is clear that before the fight there was no reason to believe that his well-being was in jeopardy, and during the fight plaintiff maintained the upper hand. Additionally, both plaintiff's testimony and the conceded lack of an injury is contradictory to the notion that, subjectively, when witnessing the altercation defendant Hamel became aware of but disregarded a serious threat of harm to plaintiff. In sum, the record is devoid of any evidence upon which a reasonable factfinder could conclude that defendant Hamel was aware of and disregarded an excessive risk to plaintiff's safety. Accordingly, I recommend dismissal of this aspect of plaintiff's claim against defendant Hamel as well.[FN7]

FN7. Claims involving the alleged failure of prison officials to protect an inmate from harm are also subject to review under the Fourteenth Amendment's substantive due process provision. Though the requisite mental state for establishing a Fourteenth Amendment failure to protect claim is somewhat unclear, it is at least apparent that to be legally cognizable under that provision, the actions alleged on the part of a defendant must transcend mere negligence. *Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986) (lack of due care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent); *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (same); *Morales v. New York State Dep't of Corrs.,* 842 F.2d 27, 30 (2nd Cir.1988) (section 1983 does not provide cause of action for negligent failure of prison officials to protect an inmate from injury); *Abdul–Matiyn v. New York State Dept. of Corr. Servs.,* 871 F.Supp. 1542, 1546–47 (N.D.N.Y.1994) (Chin, J.) (citing Morales). For the same reasons that plaintiff's failure to protect claim under the Eighth Amendment fails, any such claim brought under the Fourteenth Amendment cannot survive defendants' motion for summary judgment.

2. *Defendant McNally*

Defendant McNally does not appear to have been involved in the March 13, 2009 incident. *See* Complaint (Dkt. No. 1) ¶ 30. Plaintiff's complaint alleges that two days later he was informed by another individual that Officer McNally told the inmate that Gillard had raped a seven year old girl, apparently intending that the inmate harm Gillard. *Id.* ¶ 33. This claim, which is both purely speculative and attenuated in nature, is insufficient to support a constitutional claim against defendant McNally. *See McPherson v. N.Y. City Dep't of Educ.,* 457 F.3d 211, 215 n. 4 (2d Cir.2006) ("speculation alone is insufficient to defeat a motion for summary judgment"); *see also Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 90 (2d Cir.2005) (holding that, in age discrimination case, allegations of defendant's knowledge of protected ground must be supported by evidence to avoid summary judgment; *Cusamano v. Sobek,* 604 F.Supp.2d 416, 432–33, 469 (N.D.N.Y.2009) (plaintiff's contention that defendant Sobek was on the other end of a telephone conversation was a mere "guess" insufficient to defeat a grant of summary judgment with respect to a claim that defendants conspired to violate plaintiff's civil rights). Moreover, during his deposition plaintiff conceded that Corrections Officer McNally never physically harmed him and stated that while Officer McNally "[s]anctioned

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 967064 (N.D.N.Y.)

(Cite as: 2012 WL 967064 (N.D.N.Y.))

another inmate to attack [him]", he admitted that the alleged attack is not part of this lawsuit. McCartin Decl. (Dkt. No. 56–2) Exh. 1 at pp. 53–55. I therefore recommend dismissal of plaintiff's claims against defendant McNally.

IV. *SUMMARY AND RECOMMENDATION*

Plaintiff's remaining claims in this action against defendant McNally appear to be nebulous, at best, and by plaintiff's own admission are not central to this action. Based upon the record now before the court I conclude that no reasonable factfinder could find a basis to hold defendant McNally accountable for violating plaintiff's civil rights.

**\*9** Turning to plaintiff's claims against defendant Hamel, as a matter of law the record fails to support a claim of failure to protect the plaintiff from a known harm as well as his claim of the use of excessive force. Simply stated, it appears that the force involved and any resulting injuries sustained by the plaintiff were *de minimis* and constitutionally insignificant, particularly given that at the relevant times Corrections Officer Hamel and his fellow officers were acting to restore discipline following an altercation between two inmates.[FN8] Accordingly, it is hereby respectfully

> FN8. In light of my recommendation on the merits I find it unnecessary to address defendants' alternative argument of entitlement to qualified immunity. *See Saucier v. Katz,* 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Harhay v. Town of Ellington Bd. Of Ed.,* 323 F.2d 206, 211 (2d Cir.2003); *Warren v. Town of Ellington* Bd. Of Ed., 323 F.3d 206, 211 (2d Cir.2003); *Warren v. Keane,* 196 F.3d 330, 332 (2d Cir.1999) (citing *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996)).

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 56) be GRANTED, and plaintiff's remaining claims in this action be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2012.

Gillard v. Hamel
Slip Copy, 2012 WL 967064 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2012 WL 960967 (N.D.N.Y.)

(Cite as: 2012 WL 960967 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Gary GILLARD, Plaintiff,

v.

Scott HAMEL and Peter McNally, Defendants.

No. 9:09–CV–0431 (TJM/DEP).

March 21, 2012.

Gary Gillard, Pine City, NY, pro se.

Michael G. McCartin, Office of Attorney General, Albany, NY, for Defendant.

### DECISION & ORDER

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. David E. Peebles, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). No objections to the Report–Recommendation and Order dated February 24, 2012 have been filed, and the time to do so has expired. Furthermore, after examining the record, this Court has determined that the Report–Recommendation and Order is not subject to attack for plain error or manifest injustice. Accordingly, the Court adopts the Report–Recommendation and Order for the reasons stated therein.

It is therefore,

**ORDERED** that Defendants' motion for summary judgment (Dkt.# 56) is **GRANTED,** and all claims in this action are **DISMISSED.**

**IT IS SO ORDERED.**

N.D.N.Y.,2012.

Gillard v. Hamel
Slip Copy, 2012 WL 960967 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.