**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**JOSE BERMUDEZ,**

                              **Plaintiff,**        **9:11-CV-0947**
                                                         **(MAD/DEP)**

      v.

**C.O. WAUGH,**

                              **Defendant.**

---

**APPEARANCES:**                                       **OF COUNSEL:**

**JOSE BERMUDEZ**
**03-A-4229**
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**               **DOUGLAS J. GOGLIA, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**Hon. Mae A. D'Agostino, U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     This action, commenced by Plaintiff in the United States District Court for the Southern District of New York, was transferred to the Northern District by Order of Southern District Chief Judge Loretta A. Preska. *See* Dkt. No. 5. Plaintiff, who is an inmate currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges that Defendant, a corrections officer employed at the prison facility in which Plaintiff was

confined at relevant times, assaulted him in violation of the Eighth Amendment after he refused to comply with an order that he was allegedly exempt from obeying. *See* Dkt. No. 1.

On July 7, 2012, Defendant filed a motion for summary judgment. *See* Dkt. No. 24. Despite receiving notice of Defendant's motion and the need to properly oppose it from both Defendant's counsel and the Court, Plaintiff failed to respond to the motion. *See* Dkt. Nos. 24, 25. On January 29, 2013, Magistrate Judge Peebles issued a Report and Recommendation in which he recommended that the Court grant Defendant's motion. *See* Dkt. No. 26. On February 13, 2013, the Court received Plaintiff's objections to Magistrate Judge Peebles' Report and Recommendation. *See* Dkt. No. 27.

Currently before the Court is Magistrate Judge Peebles' Report and Recommendation.

## II. BACKGROUND

On the morning of May 4, 2011, Plaintiff was informed that he was being relocated from his cell in Eastern Correctional Facility's ("Eastern C.F.") west wing to another housing unit within the facility. *See* Dkt. No. 24-2 at ¶ 3. In response, Plaintiff prepared for the move by packing his personal property and proceeding to the ground floor. *See id.* at ¶¶ 4-5.

When Defendant arrived at the ground floor, a dispute arose concerning the extent of Plaintiff's personal property. *See id.* at ¶ 6. Specifically, Defendant accused Plaintiff of having excessive property and ordered him several times to take his property bags to the basement for inspection and inventorying. *See id.* at ¶¶ 7-13. Plaintiff refused each of those orders, claiming that, because he was medically exempt from lifting anything in excess of twenty pounds, he could not comply. *See id.* at ¶ 14. Instead, Plaintiff sat down in a chair, explicitly stated that he was

2

refusing to comply with the orders, and demanded that the sergeant on duty be contacted. *See id.* at ¶ 15.

After another corrections officer approached the area and indicated that he needed to use the cart on which Plaintiff's personal property was situated, Defendant again ordered Plaintiff to remove a bag from the property cart. *See id.* at ¶¶ 20-21. After Plaintiff complied, Defendant directed him to carry the rest of his bags. *See id.* at ¶ 23. When Plaintiff again refused to comply with this order, Defendant "charged [him] like a football player . . . leaned down a little bit, ran towards [him,] . . . pushed his weight against [his] body" and either hit or punched Plaintiff in the chest. *See* Dkt. No. 24-4 at 19; Dkt. No. 24-2 at ¶ 26.

Immediately following the encounter, which lasted only "seconds," Plaintiff was transported to the facilities Special Housing Unit ("SHU"). *See* Dkt. No. 24-2 at ¶¶ 27, 31. Approximately one hour later, Plaintiff was taken to the prison infirmary, where his injuries were examined and photographed by the medical staff. *See id.* at ¶ 32. Medical records from the examination reflect that Plaintiff's injuries from the alleged assault included only a "dime-size" abrasion in an "I" pattern on his chest, some redness and edema, and a bruise on the right side of his chest. *See id.* at ¶ 33. The observations in the medical records are consistent with Plaintiff's deposition testimony, in which he agreed that the entirety of his injuries included a "red mark" or "red bruise" on his chest. *See* Dkt. No. 24-4 at 33-36.

Following the incident, Plaintiff's property was inspected revealing an altered hot pot, which is considered contraband under prison rules. *See* Dkt. No. 24-2 at ¶¶ 29-30. Plaintiff was subsequently issued a misbehavior report for possessing contraband, creating a disturbance, refusing to obey a direct order, and engaging in verbal harassment. *See id.* at ¶ 30; Dkt. No. 24-7

3

at 2-3. On May 16, 2011, a Tier III hearing was held and Plaintiff was found guilty of all charges. *See id.*

Plaintiff commenced this action in the Southern District of New York through the filing of a "Petition Pursuant to Civil Service Law," dated May 9, 2011. *See* Dkt. No. 1. Upon transfer to this district, the Court conducted an initial review of the petition and concluded that the petition, liberally construed, sets forth an Eighth Amendment excessive force claim against Defendant. *See* Dkt. No. 7 at 6-7.[1]

On July 2, 2012, Defendant moved for summary judgment. *See* Dkt. No. 24. In his motion, Defendant argues that the record evidence, including Plaintiff's own deposition testimony, demonstrates that the amount of force used against Plaintiff was *de minimis* and, therefore, does not support an Eighth Amendment violation. *See* Dkt. No. 24-1 at 9-13. Despite receiving notice of Defendant's motion and the need to properly oppose it from both Defendant's counsel and the Court, Plaintiff failed to respond. *See* Dkt. Nos. 24, 25.

On January 29, 2013, Magistrate Judge Peebles issued a Report and Recommendation in which he recommended that the Court grant Defendant's motion in its entirety. *See* Dkt. No. 26. Specifically, Magistrate Judge Peebles found that, "[a]s it relates to the objective component, by his own account, plaintiff's injury only amounted to a small 'red mark' or 'red bruise' on his chest." *See id.* at 14 (citing Dkt. No. 24-4 at 35). Therefore, Magistrate Judge Peebles recommended that the Court find that such "a limited use of force cannot satisfy the objective requirement" of Plaintiff's excessive force claim. *See id.* (citation omitted). Moreover, Magistrate Judge Peebles

---

[1] The Court also concluded that the petition failed to assert a cognizable claim against Defendant Meineke and ordered all claims against her to be dismissed with leave to replead. *See* Dkt. No. 7 at 7-8. Despite being given this opportunity, Plaintiff did not submit an amended complaint.

4

found that Plaintiff cannot satisfy the objective prong either because, "[b]y plaintiff's own account, defendant Waugh used force only as a result of plaintiff's explicit refusal to obey multiple orders." *See id.* (citing Dkt. No. 24-4 at 17). Further, Magistrate Judge Peebles noted that "the force by defendant Waugh was applied over only a matter of seconds and included only a single push or shove, with plaintiff admitting that defendant Waugh, when allegedly 'charging' plaintiff, was not running at top speed." *See id.* at 14-15 (quoting Dkt. No. 24-4 at 18-19, 34).

### III. DISCUSSION

**A.     Standard of review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at

36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,'

6

completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment. *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.     Relief under 42 U.S.C. § 1983**

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)) (other citation omitted).

**C.     Excessive force**

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment prohibits the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).

To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *See Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." *Hudson*, 503 U.S. at 9 (internal citations omitted); *Blyden*, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation *per se*" regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9); *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) ("The 'core judicial inquiry' . . . was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'" (quotation omitted)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate a "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7). In determining whether a defendant acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between

8

that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Having carefully reviewed the entire record in this matter, the Court finds that Magistrate Judge Peebles correctly determined that the Court should grant Defendant's motion for summary judgment. Plaintiff does not dispute Defendant's account regarding the amount of force used during the incident in question and the resulting injury. During his deposition, Plaintiff recounted the incident as follows:

> He charged me like a football player. Body was leaned down a little bit, ran towards me. He ran for – I can't say he was running full force, he wasn't that far from me. I don't know how many feet there was. But it was like a three-step staircase, but you have to come down from. He ran towards me, and with his weight he pushed his weight on my body, and I believe with his fist that he punched me in my chest area with his body weight at the same time.

*See* Dkt. No. 24-4 at 18-19. This conduct resulted in injuries that were described by Plaintiff as only a "little red mark" or "red bruise," which was only "a couple centimeters across." *See id.* at 34-35. This *de minimis* use of force, which caused only slight bruising, is clearly insufficient to satisfy the objective prong of an excessive force claim. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (holding that inmate's claims that he was "bumped, grabbed, elbowed, and pushed" by prison officials insufficient); *James v. Phillips*, No. 05 Civ. 1539, 2008 WL 1700125, *4-*5 (S.D.N.Y. Apr. 9, 2008) (finding *de minimis* use of force when prison guard shoved inmate into door which resulted in swelling of the inmate's chin); *Virella v. Pozzi*, No. 05 Civ. 10460, 2006 WL 2707394, *3 (S.D.N.Y. Sept. 20, 2006) (finding only a *de minimis* force used where officer swung keys at the plaintiff, making contact with his head and causing a bump); *Espinal v. Goord*, No. 00 Civ. 2242, 2001 WL 476070, *4, *13 (S.D.N.Y. May 7, 2001) (finding that the use

9

of force was *de minimis* where guard struck the plaintiff in face two or three times, causing his face to turn red, but resulting in no other injuries); *Yearwood v. LoPiccolo*, No. 95 Civ. 2544, 1998 WL 474073, *1, *7 (S.D.N.Y. Aug. 10, 1998) (finding a *de minimis* use of force where guard choked the plaintiff, hit his head with a pair of keys, and punched him in the lip); *Show v. Patterson*, 955 F. Supp. 182, 192-93 (S.D.N.Y. 1997) (finding only a *de minimis* force used where officer pushed the inmate against wall); *Gonzalez v. Coughlin*, No. 92 Civ. 7263, 1996 WL 496994, *4-*5 (S.D.N.Y. Aug. 21, 1996) (finding no excessive use of force where the plaintiff alleged corrections officers tripped him to the ground and hit him in the knee); *DeArmas v. Jaycox*, No. 92 Civ. 6139, 1993 WL 37501, *4 (S.D.N.Y. Feb. 8, 1993) (finding a *de minimis* use of force where the inmate suffered a bruise and injured right knee after being punched and kicked once).

Moreover, Magistrate Judge Peebles correctly found that Plaintiff has failed to put forth sufficient evidence to create a question of fact as to the subjective element of his claim. By his own account, Defendant only used force as a result of Plaintiff's explicit refusal to obey multiple orders. *See* Dkt. No. 24-4 at 17. Further, Plaintiff admits that the force used lasted only "seconds." *See id.* at 18-19, 34. Considering this testimony, no rational trier of fact could find that Defendant used force against Plaintiff in a malicious or sadistic manner, or that the force that was used was for a purpose other than a "good faith effort to . . . restore discipline." *Hudson*, 503 U.S. at 6.

In his objections to Magistrate Judge Peebles Report and Recommendation, Plaintiff asks this Court to forgive his failure to submit a response to Defendant's motion. *See* Dkt. No. 27 at ¶ 2. Plaintiff claims that he "had no idea that this matter was in discovery stage" or that discovery had now closed. *See id.* at ¶ 3. Moreover, Plaintiff now asserts that he was only taken to the

10

SHU after he "complained of the assault and how it was trying to be covered-up." *See id.* at ¶ 6. Plaintiff claims that the Tier III hearing, at which he was found guilty of various charges, was procedurally defective and that no evidence was presented to support the finding of guilt on several of the charges. *See id.* at ¶¶ 9-13. Moreover, Plaintiff claims that his placement in the SHU constituted cruel and unusual punishment because it was "done under a false pretense." *See id.* at ¶ 14.

First, to the extent that Plaintiff is now attempting to allege a First Amendment retaliation claim, a Fourteenth Amendment due process claim, and an Eighth Amendment claim regarding his SHU confinement, his claims must be rejected. It is well settled that a litigant may not raise new claims not contained in the complaint in opposition to a motion for summary judgment or in objections filed in response to a Magistrate Judge's report and recommendation. *See Avillan v. Donahoe*, 483 Fed. Appx. 637, 639 (2d Cir. 2012) (holding that the district court did not err in disregarding allegations the plaintiff raised for the first time in response to the defendant's motion for summary judgment) (citation omitted); *Shah v. Helen Hayes Hosp.*, 252 Fed. Appx. 364, 366 (2d Cir. 2007) (holding that "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint") (citation omitted); *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 219-20 (N.D.N.Y. 2008) (holding that a *pro se* plaintiff's civil rights complaint should not be effectively amended by his new allegations presented in his response to the defendants' motion for summary judgment). Although the Court is aware of the special solicitude afforded to *pro se* litigants, construing Plaintiff's objections to the Report and Recommendation as amending his complaint would be inappropriate. In its November 1, 2011 Memorandum-Decision and Order, the Court granted Plaintiff an opportunity to amend his complaint, but he declined to do so. *See* Dkt. No. 7. Moreover, that decision made clear to Plaintiff that the Court construed his complaint

11

as alleging only the two causes of action identified. *See id.* If Plaintiff was attempting to allege claims in his complaint in addition to those identified by the Court, he should have moved to amend at that point or in the eight months that followed prior to Defendant filing its motion for summary judgment.

Moreover, at Plaintiff's deposition, he indicated to Defendant's counsel that he originally intended for this action to raise the above mentioned claims in addition to his excessive force claim. *See* Dkt. No. 24-4 at 37-38. Plaintiff indicated to counsel during that deposition that he was going to "write the judge" regarding this issue and to explain that he intended for his complaint to contain these additional allegations. *See id.* Plaintiff, however, did not bring this issue to the Court's attention until he filed his objections to the Report and Recommendation. Finally, the Court notes that Plaintiff has not filed a motion to amend his complaint and the discovery that has taken place in this matter was directed solely at the issue of whether Defendant used excessive force in violation of the Eighth Amendment. *See State Farm Ins. Co. v. Kop-Coat, Inc.*, 183 Fed. Appx. 36, 38-39 (2d Cir. 2006) (citation omitted).

## IV. CONCLUSION

After carefully considering Magistrate Judge Peebles' Report and Recommendation, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Peebles' January 29, 2013 Report and Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 21, 2013
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge